IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRANCIS PELLEGRINO,                          )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )      1:23-cv-1166 (LMB/LRV)
                                             )
EQUIFAX INFORMATION SERVICES, LLC,           )
      et al.,                                )
                                             )
            Defendants.                      )

MEMORANDUM OPINION

Before the Court is defendant the Higher Education Loan Authority of the State of

Missouri's ("MOHELA") Motion for Judgment on the Pleadings ("Motion") [Dkt. No. 32],

requesting that the Court enter judgment in its favor under Fed. R. Civ. P. 12(b)(1) or

alternatively Fed. R. Civ. P. 12(b)(6). More specifically, MOHELA, a servicer of federal student

loans, argues that it is immune from suit because it is "part of the State of Missouri under

Supreme Court precedent and, therefore, is entitled to sovereign immunity under the Eleventh

Amendment," or it is "otherwise an 'arm of the state' of Missouri under the [United States Court

of Appeals for the] Fourth Circuit's prevailing four factor test." [Dkt. No. 48] at 2. Plaintiff

Francis Pellegrino ("plaintiff") opposes the Motion, arguing that it rests "on the mistaken belief

that the Supreme Court has immunized [MOHELA] from suit in a ruling that considered only

standing." [Dkt. No. 46] at 1. Plaintiff also argues that "given the structural and financial

independence [it] exercises," MOHELA would fail the Fourth Circuit's "arm-of-the state" test.

Id. For the reasons that follow, MOHELA's Motion for Judgment on the Pleadings will be

DENIED.

## I. BACKGROUND

According to the Complaint,[1] between August 2013 and August 2017, plaintiff obtained 13 federal student loans in the form of subsidized and unsubsidized Direct Stafford loans. [Dkt. No. 1] at ¶ 16. In September 2014, the Pennsylvania Higher Education Assistance Agency ("PHEAA"), operating as FedLoan Servicing, began servicing plaintiff's loans. Id. at ¶ 17.

In 2016, plaintiff entered a full-time graduate program putting his loans into an in-school and post-enrollment deferred status, which continued until December 1, 2019. Id. at ¶ 18. In May 2022, pursuant to the termination of its federal student loan servicing contract with the United States Department of Education, PHEAA transferred plaintiff's loans to MOHELA for servicing. Id. at ¶ 22. On August 2, 2022, the United States Department of Education granted plaintiff a discharge of all his student loans based on "a determination of Total and Permanent Disability." Id. at ¶ 25.

The Complaint alleges that MOHELA inaccurately reported to co-defendants Equifax Information Services, LLC, TransUnion LLC, and Experian Information Solutions, Inc. that plaintiff was delinquent on seven of his loans during a period when his loans were on forbearance or deferred status in 2019, as confirmed by his National Student Loan Data Service information. Id. at ¶¶ 38, 43. As a result, on May 1, 2023, plaintiff sent a dispute to Equifax that cited the erroneous 2019 reporting on the PHEAA and MOHELA tradelines. Id. at ¶ 44. On May 16, 2023, plaintiff also sent disputes to TransUnion and Experian that cited the errors in the MOHELA tradelines. Id. at ¶ 45. These parties "timely notified MOHELA of the disputes;"

---

[1] Because MOHELA filed this Motion for Judgment on the Pleadings, only the factual allegations against MOHELA are relevant to this Memorandum Opinion.

however, "[d]espite the evidence of forbearance submitted, [d]efendants verified the MOHELA and PHEAA tradelines as accurate." Id. at ¶¶ 47-48.

    Plaintiff has filed a two-count Complaint.  In Count I, he alleges that defendants MOHELA and PHEAA violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., when they "willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of [p]laintiff's disputes from [Equifax, TransUnion, and Experian], by failing to appropriately report the results of its [sic] investigation, by failing to appropriately modify, delete, and/or block the information, in reckless disregard of the statutory requirements, [p]laintiff's disputes, and their own records," Id. at ¶ 55.  Count II alleges that defendants Equifax, Experian, and TransUnion violated the FCRA when they failed to follow reasonable procedures to assure the maximum possible accuracy of information concerning plaintiff in his consumer reports.  Id. at ¶ 60.  As a result, plaintiff seeks an award of actual, statutory, and punitive damages, as well as attorney's fees and costs.  Id. at 10.[2]

    On October 24, 2023, the same day that it filed its Answer, MOHELA filed the instant Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(b)(1) or alternatively Fed. R. Civ. P. 12(b)(6), [Dkt. No. 32], to which plaintiff has filed an opposition, [Dkt. No. 46]. MOHELA has filed a reply to the opposition, [Dkt. No. 48], and oral argument has been held.

## II. DISCUSSION

    MOHELA provides "two independent reasons" why it is entitled to sovereign immunity under the Eleventh Amendment.  See [Dkt. No. 48] at 2.  First, it argues that MOHELA is part of the State of Missouri under Supreme Court precedent.  Second, it argues that MOHELA is

---

[2] On November 7, 2023, plaintiff filed a Notice of Voluntary Dismissal with Prejudice as to defendant TransUnion. [Dkt. No. 38].  The remaining defendants, PHEAA, MOHELA, Equifax, and Experian have timely filed Answers.

otherwise an "arm of the state" of Missouri under the Fourth Circuit's prevailing four-factor test. Id. Each independent reason is addressed in turn.

### A. **Standard of Review**

Under Fed. R. Civ. P. 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. A party is entitled to judgment on the pleadings only when the pleadings, construing the facts in the light most favorable to the non-moving party, (1) fail to state any cognizable claim for relief; and (2) the matter can be decided as a matter of law. See Zeran v. Am. Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997).

Although "[i]n ruling on a motion under Rule 12(c), the court applies the standard for a Rule 12(b)(6) motion," United States v. 2001 Lexus LS430, 799 F. Supp. 2d 599, 601 (E.D. Va. 2010), "[u]nlike a Rule 12(b)(6) motion, courts 'consider[] the pleadings (the complaint, answer, and any written instruments attached to those filings) and any documents that are integral to the complaint and authentic.'" McManus v. U.S. Immigr. & Customs Enf't, 2023 WL 3127630, at *2 (E.D. Va. Apr. 27, 2023) (quoting Nationwide Gen. Ins. Co. v. Staples, 2022 WL 7284365, at *2 (E.D. Va. Sept. 7, 2022)).

### B. **Analysis**

#### 1. Part of the State

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. MOHELA argues that it is entitled to immunity under the Eleventh Amendment in light of the United States Supreme Court's decision in Biden v. Nebraska, which

4

concerned the Biden administration's student loan debt cancellation plan.[3]  In that case, the State

of Missouri argued that it had standing to sue because the plan would have resulted in decreasing

MOHELA's revenue.  143 S. Ct. 2355 (2023).  In resolving the standing issue, the Supreme

Court held that MOHELA was "part of" the State of Missouri, and therefore, that Missouri had

satisfied the injury-in-fact element for Article III standing.  Id. at 2375.  Plaintiff contests

MOHELA's argument that the Supreme Court's standing decision has immunized it from suit,

emphasizing that in Biden, the Supreme Court only concluded that the State of Missouri had

Article III standing to oppose the Biden student loan debt cancellation plan because it found

MOHELA to be a "public instrumentality" performing a public function, and subject to the

State's supervision and control, see Biden, 143 S. Ct. at 2365-68; however, the Supreme Court

did not consider, let alone mention, sovereign immunity.  See [Dkt. No. 46] at 4.

MOHELA's reliance on Biden to argue that it is "part of" the State of Missouri is

unpersuasive considering that the Supreme Court did not address sovereign immunity.  Indeed,

the Supreme Court emphasized that "a public corporation can count as part of the State for some

---

[3] In 2022, the Biden administration announced its plan to forgive $10,000 in student loans for
borrowers with an annual income of less than $125,000 under the Higher Education Relief
Opportunities for Students Act of 2003 ("HEROES Act").  Biden, 143 S. Ct. at 2364.  Nebraska
and five other states, including Missouri, moved for a preliminary injunction in the United States
District Court for the Eastern District of Missouri, challenging the forgiveness program because
it exceeded the Secretary of Education's statutory authority.  Id. at 2365.  The district court held
that none of the States had standing to challenge the plan and dismissed the action.  See
Nebraska v. Biden, 636 F. Supp. 3d 991 (E.D. Mo. 2022).  The States appealed, and the United
States Court of Appeals for the Eighth Circuit issued a nationwide preliminary injunction
pending resolution of the appeal.  Biden, 143 S. Ct. at 2365.  With the plan paused, the Secretary
asked the Supreme Court to vacate the injunction or to grant certiorari before judgment "to avoid
prolonging this uncertainty for the millions of affected borrowers."  Id.  Before addressing the
merits of the case, and ultimately deciding that "the HEROES Act provides no authorization for
the Secretary's plan," the Court analyzed whether Missouri had standing to challenge the
student-debt relief program and determined that it did have standing because the plan would
result in some financial injury to Missouri.  Id. at 2375.

but not 'other purposes.'" <u>Biden</u>, 143 S. Ct. at 2368, n.3 (citation omitted).  As the United States

Solicitor General explained during oral argument in <u>Biden</u>, "[w]e don't think MOHELA actually

qualifies as an arm of the state for sovereign immunity" because of the differing "critical factors"

between an inquiry into standing versus sovereign immunity.  Transcript of Oral Argument at 68,

<u>Biden v. Nebraska</u>, 143 S. Ct. 2355 (2023) (No. 22-506).  Accordingly, in finding that Missouri

had standing, the Supreme Court only concluded that, as a result of how MOHELA operates,

Missouri had shown that it had a "personal stake in the case" because it would suffer an "injury

in fact." <u>Biden</u>, 143 S. Ct. at 2365.  Although the Supreme Court found a relationship between

Missouri and MOHELA sufficient to give Missouri standing, because sovereign immunity

requires an analysis into the extent of an entity's relationship with a state, the Supreme Court's

analysis in <u>Biden</u> does not resolve the question of whether MOHELA is entitled to Eleventh

Amendment immunity.

    2. Arm of the State

    The Eleventh Amendment "protects the states from suit in federal court, as well as

'arm[s] of the State and State officials.'" <u>Lawson v. Union Cnty. Clerk of Ct.</u>, 828 F.3d 239, 250

(4th Cir. 2016), as amended (July 8, 2016) (quoting <u>Bland v. Roberts</u>, 730 F.3d 368, 390 (4th

Cir. 2013)).  Because federal law governs whether a state-created entity is an "arm of the state"

such that it is entitled to immunity under the Eleventh Amendment, courts in this circuit evaluate

the following four "non-exclusive factors" when determining arm-of-the-state status:

> (1) whether any judgment against the entity as defendant will be paid
> by the State . . .;
> (2) the degree of autonomy exercised by the entity, including such
> circumstances as who appoints the entity's directors or officers, who
> funds the entity, and whether the State retains a veto over the entity's
> actions;
> (3) whether the entity is involved with state concerns as distinct from
> non-state concerns, including local concerns; and

> (4) how the entity is treated under state law, such as whether the
> entity's relationship with the State is sufficiently close to make the
> entity an arm of the State.

U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency, 804 F.3d 646, 650-51 (4th

Cir. 2015) [hereinafter, Oberg III].  In applying the Fourth Circuit's test to MOHELA, the Oberg

factors plainly favor finding that MOHELA is not entitled to sovereign immunity.

   i. Judgment Against the Entity

   Under the first Oberg factor the Court must determine whether any judgment against

MOHELA will be paid by the State of Missouri.  Id.  Whether a judgment against an entity

would have to be paid from the state's treasury is "the most salient factor in Eleventh

Amendment determinations," and "a finding that the State treasury will not be affected by a

judgment against the governmental entity weighs against finding that entity immune."  Cash v.

Granville Cnty. Board of Educ., 242 F.3d 219, 224 (4th Cir. 2001) (quoting Hess v. Port Auth.

Trans-Hudson Corp., 513 U.S. 30, 48 (1994)).  In analyzing this "most salient factor," the parties

agree that MOHELA "would be responsible, in the first instance, for paying a judgment against

it" because its authorizing statute explicitly states that the State of Missouri is not responsible for

any debt MOHELA incurs, which would include a judgment.  See [Dkt. No. 33] at 10; RSMo.

§ 173.385.1(6) ("Such bonds or other forms of indebtedness shall not constitute a debt or liability

of the state of Missouri or of any political subdivision thereof[.]").

   Instead, the parties dispute whether the State of Missouri is functionally liable for money

judgments against MOHELA.  In the Fourth Circuit, an entity may constitute an "arm of the

state" if the state is functionally liable, even if not legally liable, to pay a judgment entered

against the entity, and "where an agency is so structured that, as a practical matter, if the agency

is to survive, a judgment must expend itself against state treasuries, common sense and the

7

rationale of the [E]leventh [A]mendment require that sovereign immunity attach to the agency." Hess, 513 U.S. at 50 (quoting Morris v. Washington Metro. Area Transit Auth., 781 F.2d 218, 227 (D.C. Cir. 1986)).  MOHELA argues that "because a judgment could impair [its] obligation to contribute millions to Missouri's [Lewis and Clark Discovery ("LCD")] Fund" or impair MOHELA's ability to provide "tens of millions of dollars to the State of Missouri for grants and scholarships," the State of Missouri is functionally liable for any judgment against MOHELA. [Dkt. No. 33] at 12.

In 2007, the State of Missouri and MOHELA partnered to establish the LCD Fund, which is used for the limited purpose of supporting capital projects at state public colleges and universities, as well as supporting the Missouri technology corporation's ability to work with colleges and universities to advance innovative technologies.  RSMo. § 173.392.  Under § 173.392, MOHELA is required to provide the bulk of the funding.  Although it has made the decision to delay further payments, it still has a limited obligation to provide some money to the LCD Fund.  It is true, as MOHELA argues, that a judgment against MOHELA could impact its ability to provide the remainder of the funds to the LCD Fund; however, given the LCD Fund's narrow purpose, MOHELA's obligation to the State is limited.  Moreover, the statute creating the LCD Fund provides a mechanism for delaying payments if making such payments would "materially adversely affect the services and benefits provided" or "the economic viability of the authority."  RSMo. § 173.385.2.  Accordingly, even if a judgment against MOHELA resulted in a delay in its contribution to the LCD Fund, that delay would not impact the general revenue of the State because "moneys in the [LCD Fund] shall not revert to the credit of the general revenue fund," RSMo. § 173.392, and the State of Missouri is not required by statute to fund MOHELA's share.

MOHELA's scholarship contributions also do not establish functional liability because they are not mandated by statute, and as such, although MOHELA's "contributions may have saved Missouri money, [] it should not be considered when determining whether the state would be functionally liable for a judgment against MOHELA," Dykes v. Missouri Higher Educ. Loan Auth., 2021 WL 3206691, at *4 (E.D. Mo. July 29, 2021), because the State is not obligated to make those contributions.  MOHELA's arguments, although appropriate if standing were at issue, merely describe how the State could suffer some harm if plaintiff obtained a judgment against MOHELA; however, they do not establish that Missouri would functionally "expend" any State funds to pay a judgment, and "in the absence of either legal obligation or evidence that the State has ever paid any such judgment, MOHELA's argument presents nothing more than a hypothetical possibility." Perkins v. Equifax Info. Servs., LLC, 2020 WL 13120600, at *3 (W.D. Tex. May 1, 2020).

Moreover, as plaintiff argues in opposing defendant's functional liability claim, MOHELA is "self-sustaining" because it "generate[s] its own revenue and pay[s] for any debts incurred," and as such, it "does not touch the concerns" addressed by the Eleventh Amendment. [Dkt. No. 46] at 6-7.  The Supreme Court has held that where "[a] discrete entity . . . is financially self-sufficient . . . [it] does not touch the concerns—the States' solvency and dignity—that underpin the Eleventh Amendment." Hess, 513 U.S. at 52.  A review of MOHELA's enabling statute and its obligations supports the argument that it is self-sustaining.

When MOHELA was established by statute in 1981 as "a public instrumentality and body corporate," its revenues and liabilities were completely independent from the State.  See RSMo. § 173.360.  Even today, MOHELA continues to generate its own revenue and pays for any debts it incurs.  See RSMo. §§ 173.385.1(12) (authority to collect servicing fees and

providing the use of such fees to cover MOHELA's expenses); 420 (requiring MOHELA to pay its own debts);[4] 425 ("[n]o asset of the authority shall be required to be deposited into the state treasury, and no asset of the authority shall be subject to appropriation by the general assembly").[5]  In analyzing whether MOHELA was entitled to Eleventh Amendment sovereign immunity in an action that sought to challenge MOHELA's misrepresentation of repayment options to borrowers, the United States District Court for the Eastern District of Missouri applied the United States Court of Appeals for the Eighth Circuit's two-factor test and found that the State would not be "legally or functionally liable for a judgment against MOHELA" because "[t]he[] [statutory] provisions make clear that the legislature intended to create a self-sustaining and financially independent agency." Dykes, 2021 WL 3206691, at *3.[6]  Similarly, in addressing whether MOHELA was entitled to sovereign immunity in an action alleging that it had violated the Fair Credit Reporting Act for failing to discharge fraudulent loans, the United States District Court for the Western District of Texas applied the United States Court of Appeals for the Fifth Circuit's six-factor test and found that "the express financial segregation of MOHELA from any State funds, and the lack of any obligation for the State to pay MOHELA's

---

[4] Although MOHELA is statutorily authorized to seek an advance from the State when it is unable to cover its expenses, such an advance "shall be repaid or shall be reimbursed to general revenue within a reasonable time after the authority receives funds as provided in sections 173.350 to 173.450, and shall be repaid solely from such funds." RSMo. § 173.420.

[5] In analyzing standing in Biden, the Supreme Court found that "[t]he plan's harm to MOHELA is also a harm to Missouri," 143 S. Ct. at 2366; however this does not mean, as MOHELA insinuates, that the State of Missouri is functionally liable because, in only deciding standing, the Supreme Court did not determine whether a judgment against MOHELA would have to be paid from the State's treasury.

[6] The Eighth Circuit's two-factor test to determine whether an entity is entitled to sovereign immunity involves considering MOHELA's relationship with the State of Missouri and the amount of independence MOHELA has from the State as well as whether the State would be legally or functionally liable for a judgment against MOHELA.  See Dykes, 2021 WL 3206691, at *3.

debts, 'strongly' weigh against an application of sovereign immunity." Perkins, 2020 WL 13120600, at *4.[7]

Those courts relied on the Fourth Circuit's decisions in Oberg II and Oberg III, which considered whether the PHEAA, a co-defendant in this action, had arm-of-the-state status for purposes of Eleventh Amendment immunity. The Fourth Circuit concluded that the PHEAA was not entitled to sovereign immunity, emphasizing that segregation of a loan entities' funds from the general State funds, as in MOHELA's case, "counsel[ed] against establishing arm-of-the-state status," even when the State had a general duty to "support and maintain" the entity. United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 138-44 (4th Cir. 2014) [hereinafter, Oberg II]; see Oberg III, 804 F.3d at 655. Because MOHELA continues to operate as financially segregated from any State funds, the first factor, which is the most significant factor, weighs heavily against finding that MOHELA is an arm of the state.[8]

---

[7] The Fifth Circuit's six-factor test to determine whether an entity is entitled to sovereign immunity involves considering whether the state statutes and case law view the entity as an arm of the state; the source of the entity's funding; the entity's degree of local autonomy; whether the entity is concerned primarily with local, as opposed to statewide, problems; whether the entity has the authority to sue and be sued in its own name; and whether the entity has the right to hold and use property. See Perkins, 2020 WL 13120600, at *2.

[8] MOHELA cites to one case that has found it is entitled to sovereign immunity, Gowens v. Capella Univ., Inc., to support its argument under Oberg's first factor. See [Dkt. No. 33] at 11; Gowens, 2020 WL 10180669 (N.D. Ala. June 1, 2020). In that case, the Northern District of Alabama applied the Eleventh Circuit's four-factor test, which considers, among other things, who is responsible for paying judgments against the entity. In finding that the use of the State treasury only slightly favored MOHELA, the court asserted that a judgment against MOHELA may result in a practical, rather than legal, impact on the State of Missouri. See Gowens, 2020 WL 10180669, at *4; Dykes, 2021 WL 3206691, at *4 n.3 (distinguishing Gowens). That case does not further MOHELA's argument as it applied a different circuit's standard and did not provide any specific explanation for its conclusion.

ii. Degree of Autonomy

Under the second <u>Oberg</u> factor the Court must assess the degree of autonomy exercised by MOHELA, including who appoints MOHELA's board, how it is funded, and whether the State of Missouri retains veto power over MOHELA's actions. <u>See</u> <u>Oberg III</u>, 804 F.3d at 650-51. MOHELA argues that several elements support its claim that the State of Missouri maintains significant control over it, including that the governor directly or indirectly appoints all of MOHELA's board members, that the legislature enumerated MOHELA's powers, that the State of Missouri imposed limits on how MOHELA can conduct business, and that the State of Missouri can impose financial obligations on it. [Dkt. No. 33] at 12-15. Plaintiff challenges these claims, arguing that "[u]pon close inspection, all of these elements, in fact, suggest a high degree of autonomy." [Dkt. No. 46] at 9.

Plaintiff is correct. The record contains substantial evidence showing that MOHELA operates autonomously, largely free from State interference in its substantive decisions. Although all of MOHELA's board members are appointed directly or indirectly by the Governor of Missouri, they serve for five-year terms and can be removed only for cause, after notice and hearing. RSMo. § 173.360. In contrast, most Missouri state employees are removable at will. <u>See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO, Council 61 v. State</u>, 653 S.W.3d 111 (Mo. 2022) (upholding state law allowing for at-will employment of state civil service employees). Moreover, a board-member's five-year term exceeds the four-year term for a governor, which, as plaintiff argues, suggests an intent by the legislature to insulate members from the governor's control following appointment. [Dkt. No. 46] at 9. Even if the board-member's appointment "frequently indicates state control," other "indicia relevant to the

autonomy analysis," including MOHELA's "control over its revenues[] and corporate powers []

strongly suggest" that MOHELA is not an arm of the state.  See Oberg II, 745 F.3d at 139.

That the legislature enumerated MOHELA's powers when it created the entity is of no

significance where, as already explained, the same legislation made MOHELA a financially

independent entity with expansive powers.  For example, in addition to providing that MOHELA

has "perpetual succession as a body politic and corporate," RSMo. § 173.385.1(1), the Missouri

legislature granted it the following authority: "[t]o sue and be sued and to prosecute and defend,

at law or in equity" without any reference to involvement or approval needed from the state

attorney general, RSMo. § 173.385.1(3);[9] to issue bonds and purchase student loan notes, RSMo.

§ 173.385.1(6); "[t]o make and execute contracts, releases, compromises, and other instruments

necessary or convenient for the exercise of its powers, or to carry out its purpose," RSMo.

§ 173.385.1(11); to collect servicing fees, and use them to cover its own expenses, RSMo.

§ 173.385.1(12); to invest surplus funds in, at its own discretion, banks or government bonds,

RSMo. § 173.385.1(13); "[t]o acquire, hold and dispose of personal property," RSMo.

§ 173.385.1(14); and "[t]o enter into agreements or other transactions," RSMo. § 173.385.1(15).

In Oberg III, the Fourth Circuit found PHEAA to be autonomous, on the basis that, like

MOHELA, it had the powers to sue and be sued, to enter into contracts, and to purchase and sell

property in its own name.  See Oberg III, 804 F.3d at 670.  Courts in other circuits have also

found these facts persuasive in their circuit's arm of the state inquiries.  See e.g., Perkins, 2020

WL 13120600, at *2 (finding that, under the Fifth Circuit's six-factor test, MOHELA's ability to

hold property and to sue and be sued "favor[s]" finding that MOHELA is not immune); Dykes,

---

[9] Notably, during oral argument, MOHELA's counsel conceded that MOHELA hired private counsel to represent it, and at no point has counsel communicated with the Attorney General's Office for the State of Missouri in relation to this litigation.

2021 WL 3206691, at *3 (finding that, under the Eighth Circuit's two-factor test, MOHELA's

ability to "sue and be sued" and "to acquire, hold and dispose of personal property" indicate

"that MOHELA enjoys some operational independence from the State of Missouri").

      The Fourth Circuit has additionally held that financial independence is the "most critical

evidence of . . . autonomy." Oberg III, 804 F.3d at 669. As the PHEAA in Oberg III, MOHELA

"is not dependent on state money for its survival" and "supports itself through its commercial

financial-services activities, through which it earns hundreds of millions of dollars annually."

Id.; see RSMo. § 173.425 ("[N]o asset of the authority shall be required to be deposited into the

state treasury," "no asset of the authority shall be subject to appropriation by the general

assembly, except for those amounts distributed by the Lewis and Clark discovery fund, and

"[t]he assets of the authority shall remain under the exclusive control and management of the

authority."). Accordingly, like the PHEAA, MOHELA is "statutorily vested with control over

those funds," and segregation of a loan entities' funds from general state funds "counsels against

establishing arm-of-the-state status." Oberg III, 845 F.3d at 658.[10]

      In Oberg III, the Fourth Circuit also cited the PHEAA's creation of a nonprofit

scholarship foundation, not statutorily mandated, as a key sign of its autonomy. See Oberg III,

804 F.3d at 669. Similarly, and more strikingly, MOHELA has created many nonprofit entities,

including the Missouri Scholarship Foundation, the Missouri Family Education Loan Program,

and Knowledge Finance. See Higher Education Loan Authority of the State of Missouri,

Financial Statements and Schedule of Expenditures of Federal Awards, at 27-28 (June 30, 2023)

---

[10] PHEAA's statutory framework requires that its funds be held in the State's treasury. Despite
that requirement, the Fourth Circuit ultimately decided that PHEAA controlled the funds. Id.
Unlike the PHEAA, MOHELA maintains its funds in its own bank account, which makes the
finding of autonomy even simpler.

[hereinafter, "FY 2023"].  MOHELA's control over how to spend its substantial, independently generated revenues, which for 2023 amounted to $358.6 million, establishes MOHELA's "financial independence."  See FY 2023 at 11.

Moreover, the State of Missouri has no veto power over MOHELA's regular activities. The State requires nothing more than filing annual reports, a requirement that applies to any stock corporation.  And the State does not have any decision-making authority over MOHELA. RSMo. § 173.445.  Accordingly, under Fourth Circuit precedent this "non-substantive review process" authority cannot give rise to Eleventh Amendment immunity.  See Oberg III, 804 F.3d at 671.

MOHELA argues that its "ability to earn revenue derives solely from the authority granted to MOHELA by the legislature under the Missouri Higher Education Loan Authority Act."  [Dkt. No. 33] at 13.  This argument does not advance the autonomy inquiry because the same is true of every private corporation that requires some level of state authority to operate. Similarly, although MOHELA is limited in its ability to issue some bonds, see RSMo § 1073.285.1(8), as the Fourth Circuit has emphasized, "the arm-of-the-state inquiry[] [] does not turn on whether the entity is subject to any amount of state regulation at all, or whether it is subject to more regulation than a private business, but whether the entity functions independently of the state despite the state regulation to which it is subject."  Oberg III, 804 F.3d at 672-73 (emphasis omitted).  In analyzing comparable requirements for the PHEAA, including payment-approval processes and state oversight, the Fourth Circuit determined that these limits "operate predominantly at the administrative edges rather than the discretionary heart of the PHEAA's authority."  Id. at 673.  As in Oberg III, the regulations cited by MOHELA do not go to the "discretionary heart" of MOHELA's activity and "simply do not amount to 'pervasive control

15

over'" MOHELA.  See id. ("When the question is whether a state exercises such control over an entity that the entity is simply a tool of the state, control over matters of substance is what matters.").  Accordingly, the second Oberg factor weighs against finding that MOHELA is an arm of the state.[11]

   iii. Involvement in State Concerns

   Under the third Oberg factor, the Court must consider whether MOHELA is involved with state concerns as distinct from non-state concerns, including local concerns.  Oberg III, 804 F.3d at 651.  MOHELA argues that it is heavily involved with Missouri state concerns because providing student loan financing is a "state-wide, not local, mission."  [Dkt. No. 33] at 15. Plaintiff challenges this claim, arguing that, although MOHELA is not concerned with local affairs, its national reach as a nationwide servicer of loans diminishes its claim that it is involved with Missouri state concerns.  [Dkt. No. 46] at 12.

   The Fourth Circuit has emphasized that "[n]on-state concerns . . . encompass . . . out-of-state operations."  Oberg III, 804 F.3d at 674.  According to MOHELA's 2023 financial statements, out of MOHELA's total revenue of $358.6 million in 2023, $295 million were derived from servicing fees for federal loans nationwide.  FY 2023 at 11.  This data is not as helpful as plaintiff would like because, as MOHELA correctly explains, the financial statements do not disclose the percentage of MOHELA's nationwide servicing that involves out-of-state, as

---

[11] MOHELA's cites to two decisions, Gowens, 2022 WL 10180669, at *3, and Good v. U.S. Dep't of Educ., 2022 WL 2191758, at *3 (D. Kan. Jan. 16, 2022), which found that the control that the State of Missouri exercises over MOHELA weighs slightly in favor of finding that MOHELA is an arm of the state.  These decisions are not persuasive because both explained that MOHELA's ability to sue and be sued and its ability to make and execute contracts were not indicative of autonomy, in contrast to the Fourth Circuit's express finding that "the power to enter into contracts, sue and be sued, and purchase and sell property in its own name" "suggest operational autonomy."  Oberg III, 804 F.3d at 670.

opposed to in-state, servicing. See [Dkt. No. 48] at 11.  Without more concrete evidence that

MOHELA is primarily involved with out-of-state activity, this factor alone does not support

finding that MOHELA is not concerned with state affairs.  As the Supreme Court found in

Biden, MOHELA was established to perform "the essential public function of helping

Missourians access student loans needed to pay for college," and although it has since expanded

to become a nationwide loan servicer, its "profits help fund education in Missouri." Biden, 143

S. Ct. at 2366.  Accordingly, this factor slightly weighs in favor of MOHELA.

　　　iv. Treatment under State Law

　　　Under the final Oberg factor, the Court must analyze MOHELA's treatment under state

law.  See Oberg III, 804 F.3d at 650-51.  MOHELA claims that because Missouri law defines it

"as a state instrumentality," this factor weighs in its favor.  [Dkt. No. 33] at 16; RSMo.

§ 173.360.  In opposition, plaintiff argues that although that statute refers to MOHELA as a

"public instrumentality and body corporate," MOHELA is structurally set apart from the State of

Missouri because of its independence.  [Dkt. No. 46] at 13.

　　　As plaintiff concedes, this factor "arguably weighs in MOHELA's favor," [Dkt. No. 46]

at 13, because Missouri's legislature created MOHELA by special law to "assure that all eligible

postsecondary education students have access to student loans that are guaranteed or insured, or

both." RSMo. § 173.360.  The law was later amended to provide for MOHELA's support of

"the efforts of public colleges and universities to create and fund capital projects, and in order to

support the Missouri technology corporation's ability to work with colleges and universities,"

and defines MOHELA as "a public instrumentality and body corporate," stating that "the

exercise by [MOHELA] of [its] powers . . . shall me deemed to be performance of an essential

public function. Id.  Like the PHEAA in Oberg III, MOHELA is generally treated as a state

agency, see Oberg III, 804 F.3d at 676; however, the legislature also provided MOHELA with extensive enumerated powers such that it may function independently, which means that the legislature's creating MOHELA in the first place does not tilt the scale in favor of finding MOHELA is entitled to sovereign immunity.  See id. (looking to the information before it, outside of state law, to conclude that "nothing in the record . . . support[s] the heavy weight the district court assigned to this factor").

III. CONCLUSION[12]

Having determined that under the Fourth Circuit's four-factor test, MOHELA is not an arm of the state, MOHELA's Motion for Judgment on the Pleadings [Dkt. No. 32] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 2ⁿᵈ day of January, 2024.

Alexandria, Virginia

/s/ ⟨signature⟩
Leonie M. Brinkema
United States District Judge

---

[12] Because the Court finds that MOHELA is not entitled to sovereign immunity under the Eleventh Amendment, plaintiff's alternative argument that Missouri has waived MOHELA's sovereign immunity will not be addressed.  See [Dkt. No. 46] at 14.